FILED

United States District Court
For The Middle District
Of     Florida
Ft. Myers Div

Jimmy Lee Kroft
    plaintiff

vs.

2:20 cv-396 FtM-38NPM

1.) Mark S. Inch, secratary of D.O.C. (FL)
2.) Colonel Robinson, correctional officer
3.) Lieutenant Noriega, correctional officer
4.) Lieutenant Garmen, correctional officer
5.) C/o Harden, correctional officer
6.) C/o Walton, correctional officer
7.) I. Wilson, registered nurse
8.) Mr. Fisher, head of Classification

    Defendants

Complaint For Violation of Civil Rights

I. Parties to the complaint

A.) The Plaintiff:

Name: Jimmy Lee Kroft
Alias: James, Jim
ID: X25395
Current Institution: Charlotte C.I.

Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

## B. The Defendants:

### Defendant No. 1

Name: Mark S. Inch
Job or Title: Secratary of FL. Dept. of Corr.
Shield: N/A
Employer: FL. Dept. of Corrections
Address:

☐ Individual Capacity  ☑ Official Capacity

### Defendant No. 2

Name: Colonel Robinson
Job or Title: Correctional officer, Colonel
Shield No.: U/K
Employer: FL. Dept. of Corrections
Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

### Defendant No. 3

Name: Lieutenant Noriega
Job or Title: Correctional officer, Lieutenant
Shield No.: U/K
Employer: FL. Dept. of Corrections

Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

Defendant No. 4

Name: Lieutenant Garmen
Job or Title: Correctional officer, Lieutenant
Shield No.: u/k
Employer: FL. Dept. of Corrections
Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

Defendant No. 5

Name: C/O Harden
Job or Title: Correctional officer
Shield No.: u/k
Employer: FL. Dept. of Corrections
Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

Defendant No. 6

Name: C/O Walton
Job or Title: Correctional officer
Shield No.: u/k
Employer: FL. Dept. of Corrections

Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

Defendant No. 7

Name: I. Wilson
Job or Title: Registered Nurse
Shield No.: N/A
Employer: Centurian
Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

Defendant No. 8

Name: C/O Fisher
Job or Title: Head Classification Officer (C.C.I. 2018)
Shield No.: ulk
Employer: FL. Dept. of Corrections
Address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955

☑ Individual Capacity  ☑ Official Capacity

II. Basis for Jurisdiction

A) Plaintiff is bringing this suit against state officials for violations of his 8th and 14th Amendment Rights.

B.) Defendants acting under color of state law violated Plaintiff's 8th and 14th Amendment Rights.

1.) Mark S. Inch is the current secratary of the Florida Department of Corrections, therefore responsible for insuring that a prisoner's 8th and 14th Amendment Rights are protected and he is under color of state law, and is directly responsible for the actions of his employees.

2.) Correctional officer Robinson, a colonel at Charlotte C.I., acting under color of state law, directly violated Plaintiff's 8th and 14th Amendment Rights when he instructed and supervised the Plaintiff's attack, maliciously and sadistically with ill intent on ordering that great bodily harm be administered to the Plaintiff. Mr. Robinson is directly responsible for the actions carried out by his subordinates.

3.) Correctional officer Noriega, a Lieutenant at Charlotte C.I., and acting under the color of state law, directly violated the Plaintiff's 8th and 14th Amendment Rights when he supervised the Plaintiff's attack, which was maliciously and sadistically induced on the Plaintiff, causing great bodily harm, yet failing to protect

Plaintiff by ceasing the actions of the subordinates inflicting the abuse.

4.) Correctional officer Garmen, now a Lieutenant at Charlotte C.I., acting under color of state law, directly violated Plaintiff's 8th and 14th Amendment Rights when began striking the Plaintiff with malicous and sadistic ill intent on causing Plaintiff great bodily injury, actually ordering Walton and Harden to break Plaintiff's bones. Mr. Garmen is responsible for the fractured jaw which came from a strike to jaw area by Garmen, responsible for the laceration and perminant injury to left eye also from a punch from a closed fist; he's responsible for the perminant injury to Plaintiff's right ear which he caused by striking the Plaintiff while pinned down directly in his right with his radio. Mr. Garmen also caused the abrasions to Plaintiff's facial and neck area by forcefully the Plaintiff's face back and forth against the concrete.

5.) Correctional officer Harden, a correctional officer at Charlotte C.I and acting under the color of state law, directly violated the Plaintiff's 8th and 14th Amendments when he malicously and sadistically attacked plaintiff with ill intent

on causing Plaintiff great bodily harm and perminant disability. Mr. Harden is responsible for the finger fractures, toe fractures, and all related injuries.

6.) Correctional officer Walton, a correctional officer at Charlotte C.I. at the time of incident, who while acting under color of state law, was directly responsible for violating the Plaintiff's 8th and 14th Amendment Right. Mr. Walton, acting with malicous and sadistic ill intent on causing the Plaintiff great bodily harm and perminant injury, is directly responsible for fracturing the Plaintiff's ribs and L-1 vertebra which he did by jumping up multiple times and kneeing the Plaintiff in the back, spine, and rib area.

7.) I. Wilson, a registered nurse at Charlotte C.I., acting under color of state law, was in direct violation of Plaintiff's 8th and 14th Amendment Rights when she refused to allow Plaintiff to see the doctor although Plaintiff advised her that he had multiple broken bones and that it was an emergencey, stating to the Plaintiff to do a sick call after officers advised her not to help Plaintiff.

8.) Mr. Fisher, who was the then head of Classification at Charlotte C.I. and

acting under color of state law, was in violation of Plantiff's 8th and 14th Amendment Rights when he/she refused to order that the Plaintiff(s) be transferred to another Institution in order to prevent retaliation, by failing to protect Plaintiff, who was later on attacked once again by another officer.

## III. Prisoner Status

A.) Plaintiff is a convicted and sentenced state prisoner.

## IV. Statement of Claim

A.) This incident giving rise to this claim began inside the eastside dining hall during morning feeding at approximately 6:45 - 6:50 Am on 12/4/2018, then moved outside of exit door of eastside chowhall. No "post use of force" camera was used when moving the plaintiff outside in restraints where abuse escalated.

### Facts of Claim

1.) On 12/4/2018 at approximately 6:45-6:50 am, the Plaintiff was attacked by multiple officers in the eastside dining hall during an altercation between officers and inmate

Coy Dotson

2.) The attack followed verbal threats of broken bones and perminant injury by officers Harden, Walton, Garmen, and Robinson for witnessing officers using excessive force against Dotson, and in retaliation for writing up a previous incident of "excessive force" used on Plaintiff on 6/4/2018 involving officer Souza, that one also transpiring in the eastside dining hall at approximately 1:00 pm, noon feeding.

3.) Plaintiff was initially attacked on video surveillance inside the eastside chowhall while retreating from an attempted attack by Harden, Garmen, and Walton when he attempted to exit dining hall and got out of view of the inside surveillance camera.

4.) Officer Robinson ordered Garmen, Harden, and Walton to attack Plaintiff and break his bones, but to be sure to drag him off camera.

5.) Several officers rushed into the dining hall in pursuit of the Plaintiff as he was retreating, attempting to place hands on the wall in view of the camera submissively, and then attacked Plaintiff.

6.) Several officers slammed Plaintiff to the

ground in front of several witnesses, then began striking Plantiff and choking him while placing him in hand restraints behind his back. At this time, the Plaintiff had not yet recieved any physical injuries apart from minimum.

7.) Officers then forced Plaintiff outside of the dining hall and away from the safety of the surveillance camera coverage, with no "Post use of force camera" present. Officers then brutally, maliconsly, and sadistically beat and tortured the Plaintiff so severe that it caused Plantiff to recieve various perminant injuries, fractures, and great bodily harm.

8.) Garmen began choking, punching, elbowing and striking Plaintiff about his head area and face with his hands and radio. Garmen then pushed his body weight into the back of Plaintiffs head and violently thrashed his head back and forth against the concrete, causing the "road rash" like abrasions to the Plaintiff's face and neck area. Mr. Garmen broke Plaintiff's jaw from multiple punches, caused laceration to left eye from multiple punches to that area, and caused the perminant injury to Plaintiff's right ear by striking him several times in the head and right ear with his radio.

9.) Harden could be identified as the officer that pryed open Plaintiff's fingers and

bending at odd angles until they broke, then boasting to Garmen and Walton that he had successful broken fingers. That officer was clearly able to be identified by the Plaintiff.

10.) Officer Walton, whom the Plaintiff could also clearly identify, then advised Harden to move over so that he could take his turn on the Plaintiff, verbally stating that he was gonna break Plaintiff's rib with intent, and try to paralize him by breaking his spine. Mr. Walton is the Defendant responsible for fracturing the Plaintiffs ribs and L-1 vertbra which he accomplished by jumping up and driving his knees into Plaintiff's rib and spine area while Garmen, Harden, and other unidentified officers pinned the Plaintiff down. All officers involved were malicous and sadistic in their intent, and also verbally expressed exactly what they were gonna do to the Plaintiff, and actually following through with their threats, causing multiple bone fractures which were all confirmed at Lee Memorial Hospital on 12/4/2018.

11.) Plaintiff was then seen by Registered nurse I. Wilson and advised nurse that he needed to see the doctor immediately because he had sustained serious injuries in the attack, at which time was denied and told to put in a sick call, claiming that nothing was wrong.

12.) Plaintiff was taken to confinement and was being recorded now by the "Post use of force camera" where he stated verbally what had just transpired.

13.) After hours passed, Plaintiff was finally allowed to see the doctor after having to declare a medical emergency. When seen by doctor, it was determined to send Plaintiff to Lee Memorial hospital for a catscan. Catscan results came back at approximately 12:47pm on 12/4/2018 positive for multiple fractures.

14.) Plaintiff was discharged with an injury report back to Charlotte C.I., placed in the infirmary till 12/6/2018, then transferred to the Regional Medical Center Prison in Lake Butler, FL., and seen in urgent care at approximately 3 pm. at R.M.C. on 12/6/2018

15.) Following Plaintiff's rehabilitation and surgery, Plaintiff was transferred right back to Charlotte C.I., only to be later assaulted again. All incidents were documented via grievances and reported to the office of inspector general. Plaintiff claims that all attacks following the initial were acts of retaliation, malicous, and sadistic, and department staff have continously failed to protect Plaintiff's well being, life, and liberty.

## V. Injuries

1.) Closed fracture of multiple ribs on right side. Plaintiff instructed to wear a backbrace, and to use a spirometer. Plaintiff was written multiple passes, given xrays, and prescribed medicine for pain.

2.) Closed fracture of transverse process of lumbar vertebra. Plaintiff was not treated for this injury at R.M.C. because a catscan was never ordered, although Lee Memorial confirmed the fracture via their xray catscanning equipment.

3.) Non displaced fracture of proximal phalanx of left great toe. Plaintiff's toe was taped and placed on dressing change list, passes written, medical shoes ordered, and prescribed pain medication. Xrays

4.) Closed nondisplaced fracture of proximal phalanx of left little finger. Plaintiff's hand was casted, underwent physical therapy, passes written, pain medication prescribed, x rays...

5.) Fracture of left index finger phalanx. Plaintiff's hand was casted, underwent physical therapy, passes written, pain medication prescribed, xrays taken.

6.) Closed fracture of left side mandible (jaw). Plaintiff underwent surgery and was wired shut,

placed on a liquid diet, given narcotic medications, xrayed, and written passes.

7.) Non displaced nasal bone fracture. No remedy was provided. Fracture seen during catscan at Lee Memorial.

8.) Perminant injury to right ear including deformation and hearing loss. Currently seeing physician for the hearing loss, no current remedy for physical deformation of ear.

9.) Arthritis in left hand. Currently seeing a physician, xrays, pain medication.

10.) Laceration causing perminant injury scarring to left eye. Plaintiff was glue stitched.

11.) Multiple abrasions to face and neck area. Plaintiff was dressed and cleaned up by nurses.

12.) Back pain and numbness. Currently seeing a physician.

13.) Joint pain. Complained about in sick calls, given medications.

14.) PTSD and mental trauma. Currently being addressed by psych department.

15.) Vertigo. No remedy as of yet

16.) Migrain headaches, No remedy as of yet.

17.) Dizzyness, No remedy as of yet.

18.) Pain in esophagus / throat area. Issue has been addressed via sick call and xrays taken.

## VI. Relief Requested

1.) Plaintiff is asking for monetary punitive and compensatory / accumalative damages, nominal damages for the following:

   a.) "Pain and suffering"

   b.) "Perminant disability"
          and / or
   c.) "Perminant injury"

   d.) "Loss of Liberty and Life"
          and / or
   e.) "Future loss of work performance"

   f.) "Future medical expenses"

   g.) "Negligence"

2.) The monetary damages that plaintiff asks for according to injury area as follows:

a.) For injuries to right ear that include perminant disfigurement and hearing loss, the Plaintiff asks for $1,000,000.00 us dollars in punitive and compensatory monetary damages, and $1.00 us dollar for nominal damages.

b.) For injuries to left hand that include perminant handicap and arthritis, the Plaintiff is asking for $1,000,000.00 us dollars total in punitive and compensatory damages (monetary), and $1.00 us dollar for nominal damages

c.) For injuries to back directly resulting from rib and vertebra fractures, now having perminant injury in the form of constant back pain and numbness, the Plaintiff asks for $1,000,000.00 us dollars in total punitive and compensatory damages, and $1.00 us dollar for nominal damages.

d.) For the perminant injury and now handicap resulting from the toe fracture, requiring the Plaintiff to now wear special medical shoes, the Plaintiff is asking for $1,000,000.00 us dollars in total for punitive and compensatory monetary damages, and $1.00 us dollar for nominal damages.

e.) For the injury to Plaintiffs jaw,

the Plaintiff's asking for $1,000,000.00 us dollars in punitive and compensatory damages (monetary), and $1.00 us dollar for nominal damages.

f.) For the PTSD and psychological damages associated with this attack, the Plaintiff asks for $1,000,000.00 us dollars total for punitive and compensatory monetary damages, and $1.00 nominal damages (us Dollar)

g.) For the perminant injury (scarring) resulting from laceration to Plaintiff's left eye, causing deformation to his physical appearance, the Plaintiff asks for $25,000.00 us dollars in punitive and compensatory monetary damages, and $1.00 us dollar for nominal damages.

h.) For all future injuries to Plaintiff's body that result from surgeries and medications, the Plaintiff asks for $25,000.00 us dollars for punitive and compensatory damages (monetary), and $1.00 us dollar for nominal damages.

i.) For court cost and filing fees, Plaintiff ask for cost of said fees as compensatory damages, to be reimbursed to Plaintiff, + attorney fees.

J.) For negligence, the Plaintiff asks for $15,000.00 us dollars in punitive

and compensatory monetary damages, and $1.00 US. dollar for nominal damages.

K.) For the "Retaliation" by staff at Charlotte C.I., Plaintiff is asking for $15,000.00 US dollars total for punitive and compensatory monetary damages, and $1.00 for nominal damages.

L.) For tampering with evidence, the Plaintiff is asking for $5,000.00 US dollars for punitive and compensatory damages, $1.00 US dollar for nominal damages.

## VII. Injunctive Relief

1.) Plaintiff asks that restraining orders be placed against all named Defendants in the above complaint.

2.) Plaintiff asks that he be removed from the Florida Department of Corrections Institutions to finish his sentence, and ordered to be allowed one of the following alternative options:

   A.) Granted an interstate compact with another state of choice to finish sentence.

   B.) Plaintiff would be willing to finish his time in a Federal prison instead.

   C.) Plaintiff would be willing to be transferred to a Private Facility to finish

his remaining time.

## IIX. Exhaustion of Administrative Remedies.

a.) Plaintiff exhausted his grievance remedies for which he now bases this claim.

## IX. Previous Lawsuits

a.) Plaintiff has never filed a previous lawsuit either in state or Federal courts

## X. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to be of the best of my knowledge, in information, and in belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3.) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4.) the complaint otherwise complies with the requirements of rule 11.

A.) For Parties without an attorney

"I agree to provide the Clerk's office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the clerk's office may result in the dismissal of my case.

Date of signing: 5/24/2020

Signature of Plaintiff: *Jimmy L. Kroft*

Printed name of Plaintiff: Jimmy Lee Kroft

Prison ID #: X25395

Prison address: Charlotte C.I., 33123 Oilwell Rd., Punta Gorda, FL. 33955